CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JONATHAN U. LEE (CABN 148792)
ANDREW PAULSON (CABN 267095)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Jonathan.Lee@usdoj.gov
    Andrew.Paulson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) NO. CR 22-0003 JSW |
|---|---|
| Plaintiff, | ) **GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE PURSUANT TO FED. R. CRIM. P. 35(B)(2), AND SENTENCING MEMORANDUM** |
| v. | |
| SHEILA QUINTANA, | ) Date: December 2, 2025<br>) Time: 1:00 p.m.<br>) Before: Hon. Jeffrey S. White |
| Defendant. | |

## I.  INTRODUCTION

The United States recommends a time-served sentence for Sheila Quintana. This recommendation takes into account her cooperation and is based on a downward variance due to consideration of the relevant sentencing factors, particularly the need to avoid unwarranted disparities. Sheila Quintana was part of a conspiracy that defrauded congregations of the AME Zion Church, a denomination in which she was raised and later served as an adult in leadership positions. She fell under the sway of her then-Bishop Staccato Powell and did his bidding in carrying out the scheme. To defraud the congregations, Quintana and Powell orchestrated a change in the deeds of the church properties, placing the properties in the name of a separate corporate entity Powell formed and controlled, before pledging the properties as collateral for millions of dollars of mortgage debt that went unpaid. AME Zion congregations in Vallejo (Quintana's then-home church), Oakland (Quintana's former home church), San Jose, East Palo Alto, and other cities in California fell victim to this scheme.

In response to the charges in this case, however, Sheila Quintana accepted responsibility by pleading guilty in April 2025, and she agreed to cooperate against former Bishop Powell. Her forthright admissions of culpability were pivotal, providing the government with information through debrief sessions that strengthened the case and giving the government the ability to call a compelling trial witness. After Quintana's plea, her cooperation became known, and thereafter, Powell also pleaded guilty to the four charged counts in the Indictment. Now that the Court has sentenced Powell, the time for sentencing in Ms. Quintana's case is at hand. Therefore, the United States files this motion pursuant to Section 5K1.1 of the United States Sentencing Commission Guidelines Manual to seek a downward departure due to Ms. Quintana's substantial assistance. Based on this motion and the further downward variance recommended below, the government respectfully recommends that the Court sentence Ms. Quintana's to a time-served sentence followed by one-year term of supervised release, no fine, the mandatory special assessment, and restitution in the amount of $67,500.

## II.  OFFENSE CONDUCT

Ms. Quintana has admitted her role in the fraud scheme at the heart of this case. After Powell formed a fictitious corporate entity called Western Episcopal District, Inc. ("WED, Inc."), he made Quintana its CFO, and she worked under Powell's direction and control at all times relevant to this case.

SENTENCING MEMORANDUM
Case No. CR 22-0003 JSW                1

Using WED, Inc. as the vehicle to do so, Powell selected several AME Zion congregations and had their property deeds revised in the name of WED, Inc.  Once he had firm control over those properties, Powell – both directly and with the assistance of Quintana -- used the properties as collateral for "hard money" loans, the total approximate amount of which was over $25 million.  At Powell's direction, Quintana prepared documents purporting to establish the consent of the congregations to the loans, a necessary step to satisfy the lenders.  The documents were fake, purporting to document votes that did not occur at congregational meetings that did not happen.  In some cases, Quintana made the documents and signed the name of the local congregational officer who purportedly signed.  During the scheme, Quintana did not question Powell's authority, which she treated as absolute, even though she knew what she had done was wrong.  Powell and Quintana disbursed loan proceeds from the accounts in the name of their separate corporate entity under their control, and some of the proceeds were diverted to themselves.  In Quintana's case, she diverted $67,500 in checks she signed made payable to her husband.  In sum, both Powell and Quintana knew this activity was fraudulent, and their conduct put the financial health of the affected congregations, and by extension the AME Zion Denomination, at risk.

### III.  GUIDELINES CALCULATION

The PSR calculates Quintana's Total Offense Level as 27 after acceptance.  The Criminal History Category is I.  Therefore, the applicable guideline range is 70-87 months, but in this case the maximum sentence which could be imposed under the count of conviction is 60 months.

### IV.  THE DEFENDANT'S SUBSTANTIAL ASSISTANCE

"Substantial assistance" is evaluated with respect to the factors outlined in Section 5K1.1 of the Sentencing Guidelines. *United States v. Tadio*, 663 F.3d 1042, 1045 (9th Cir. 2011). Those factors include: (1) the significance and usefulness of the defendant's assistance; (2) the truthfulness, completeness and reliability of any information she provided; (3) the nature and extent of her assistance to the government; (4) any risks she faced in providing her assistance; and (5) the timeliness of her assistance. These factors establish that Ms. Quintana substantially assisted the government and deserves a significant downward departure.  The government therefore recommends a downward departure of six levels, and further recommends a sentence of time-served following a downward variance given the 3553(a) factors discussed below.

**A.     Nature of Information Provided and Significance and Usefulness of the Defendant's Assistance**

Ms. Quintana's cooperation assisted the government's prosecution of Staccato Powell. Ms. Quintana provided multiple proffers. In her proffers, Ms. Quintana described her conduct and involvement in the fraud forthrightly. In addition, she provided details regarding Powell's conduct in the scheme. If this case had gone to trial, the government believes that Ms. Quintana would have been a useful testifying witness regarding Powell's fraudulent conduct.

**B.     The Truthfulness, Completeness, and Reliability of any Information Provided by the Defendant**

Ms. Quintana's information has been corroborated by other evidence collected by investigators, including email messages and banking records. Although she appeared to minimize somewhat her involvement in the first session, Ms. Quintana later opened up and directly addressed her conduct and role in the fraud scheme.

**C.     Risks actually or potentially incurred by defendant including any injury suffered, or any danger or risk of injury to the defendant or her family resulting from her assistance**

The government is not aware of threats against Ms. Quintana or injuries suffered by her resulting from her cooperation. Her admissions regarding her conduct appear to have had consequences for her reputation and standing in the community, including among the AME Zion Denomination. However, to her credit, Ms. Quintana has chosen to emphasize the need to tell the truth for the historical record as it relates to the Denomination and the affected congregations.

**D. The Timeliness of the Defendant's Assistance**

Following the resolution of pretrial motions to dismiss the charges, Ms. Quintana began to proffer to the government. Due to the nature and circumstances of the offense conduct involving several transactions involving a number of affected congregations, the proffer sessions were lengthy and detailed. By early 2025, she had agreed to provide cooperation against Powell. Ms. Quintana entered her guilty plea on April 22, 2025, within a few months of her proffer sessions.

**V.     BASIS FOR DOWNWARD VARIANCE**

In addition to a downward departure, several factors under 18 U.S.C. § 3553(a) warrant a further

downward variance to a time-served sentence. There is no doubt that the nature and circumstances of Ms. Quintana's offense are serious, given the breach of trust involved with the fraud scheme. But Ms. Quintana made the decision to come clean about her own conduct as part of her decision to work with the government as a cooperating witness. As a result, Ms. Quintana played an important role in righting a wrong, helping to ensure that Powell was held accountable for his conduct. This decision on Ms. Quintana's part played a role in bringing closure to this difficult chapter in the lives of many AME Zion members across the Western District. Greater jail time would do little for specific deterrence. Ms. Quintana is 71-years old and cannot return to her prior vocation of secondary education. She is doing well on release. Moreover, Ms. Quintana has met with the government and provided candid, genuine responses to questions about her past conduct, current status, and future plans. Ms. Quintana's expression of responsibility and regret in these meetings has also made a strong, favorable impression on her behalf. It is the government's assessment that Ms. Quintana regrets the consequences of her actions on the AME Zion Denomination and the affected congregations. Her commitment to sharing the truth about her conduct weighs in favor of the government's recommendation. Finally, a custodial sentence in Ms. Quintana's case would create an unwarranted disparity. Staccato Powell was the leader and mastermind of the fraud scheme; Ms. Quintana played a role in assisting and supporting the scheme. Given the sentence imposed on Powell, a downward variance to time-served is the appropriate sentence in Ms. Quintana's case.

## VI.   CONCLUSION

Despite the seriousness of Ms. Quintana's conduct, her choice to disclose forthrightly her conduct in the fraud scheme and to cooperate against co-defendant Powell, the former bishop who was the mastermind of the scheme, warrants a time-served sentence with a one-year term of supervised release.

DATED:  November 20, 2025

CRAIG H. MISSAKIAN
United States Attorney

*Jonathan U. Lee*
JONATHAN U. LEE
Assistant United States Attorney